## A01A0735. PAGE v. THE STATE.
(552 SE2d 99)

BLACKBURN, Chief Judge.

A jury convicted Prece Page of theft by shoplifting and posses-sion of tools to commit a crime. Due to his three prior shoplifting con-victions, two of which were felonies, Page was sentenced as a recidi-vist. Following the denial of a motion for new trial, Page sought and obtained permission to file an out-of-time appeal. In this appeal, Page claims that his trial counsel rendered ineffective assistance, his confession should have been excluded, and the trial court should have sua sponte ordered a new trial when a potential juror purport-edly saw him enter the courtroom from a holding area. He also con-tests the sufficiency of the evidence. After review, we affirm for the reasons set forth below.

On appeal the evidence must be viewed in a light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence. Walters v. State.[1] Nor can the evidence be reweighed or witness credibility be reassessed. Id. at 658. When so viewed, the evi-dence established that Page drove a Nissan Maxima hatchback with two other individuals to a K-Mart store. While Page entered the store, his companions remained in the vehicle. As Page pushed a shopping cart loaded with household items toward an exit in the gar-den center, the cart bumped a merchandise display, knocking over several planters. When K-Mart cashier Mary Starnes made eye con-tact, Page abandoned his cart and while leaving activated the store security system. When the alarm sounded, Starnes yelled for him to stop. As Page ran, he clutched his side as though concealing some-thing. No other person was in the area to activate the sensors. Sev-eral employees pursued Page as he raced across a parking lot and disappeared behind a Lowe's store. Before proceeding behind Lowe's building, Page had been attired in a dark colored suit and tie with a

---

[1] Walters v. State, 244 Ga. App. 657 (538 SE2d 451) (2000).

white dress shirt. After emerging from behind Lowe's, Page was dressed only in slacks and a t-shirt. His companions picked Page up in the Nissan and then dropped him off at a nearby gasoline station. They were arrested when they returned to the K-Mart. When apprehended a short time later, Page, perspiring heavily, was identified by store employees. Behind Lowe's, K-Mart employees found Page's suit jacket, dress shirt, and tie. A Nissan key was in a pocket of the jacket. Five cartons of cigarettes were found and identified as property of K-Mart based on security tags.

After arresting all three men, investigators inventoried their vehicle and found a large plastic bag laden with sealed containers of Motrin, Advil, Tylenol, and other over-the-counter drugs behind the driver's seat. Police also discovered a "booster bag," a device commonly used to facilitate the evasion of theft detection sensors in retail stores. While in police custody, Page implicated himself in the theft of the cigarettes. Detective Chris Johnson testified that Page told him that while trying to take a shopping cart out the door of a K-Mart without stopping at the cash register, a store employee confronted him. Page admitted to the detective that he left the store with the cigarettes but denied taking the merchandise in the shopping cart.

1. Page contends that the evidence was not sufficient to sustain a conviction for the offense of possessing tools to commit a crime.

According to Detective Johnson's uncontradicted testimony, a "booster bag" is a device lined with a substance like aluminum foil and is commonly used to facilitate shoplifting because it foils theft sensors from being set off. This "booster bag" was found in plain sight in the rear hatch area of the vehicle that Page was driving that day. It is undisputed that Page had control over the vehicle and had access to the rear of the vehicle where the "booster bag" was located. Thus, Page had at least joint constructive possession of the "booster bag." *Coleman v. State*.[2] Moreover, the car was positioned just outside the premises of a store from which Page admitted shoplifting several cartons of cigarettes. This same vehicle also contained a large plastic bag filled with numerous name-brand drugs from another retailer. From this evidence, a jury could conclude that Page had access to the "booster bag," an article used to enable thieves to evade theft detection devices while shoplifting, and that Page had the power to exercise dominion and control over that booster bag. *Shropshire v. State*.[3] Accordingly, the conviction must be affirmed under the standard of *Jackson v. Virginia*.[4] See *Coleman*, supra.

[2] *Coleman v. State*, 229 Ga. App. 642, 643 (494 SE2d 549) (1997).

[3] *Shropshire v. State*, 201 Ga. App. 421, 422 (411 SE2d 339) (1991).

[4] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Page contends that the evidence was insufficient to sustain the verdict of conviction for theft by shoplifting. We disagree. Page was seen approaching a store exit with a cart loaded with merchandise. When spotted by an employee, Page abruptly left, concealing underneath his suit coat several cartons of cigarettes which activated the security system. Page's inexplicable conduct, his flight, his confession, the "booster bag" inside the vehicle he had been driving that day, and the discovery of the stolen cartons of cigarettes behind a nearby store that Page had darted behind, all constituted evidence of his guilt. *Allen v. State*.[5]

3. Page asserts that the trial court erred in admitting a custodial statement that was taken in violation of his constitutional rights. He claims that the State failed to prove the existence of a valid waiver of his rights.

Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld. *Gidden v. State*.[6] When a ruling on a suppression motion is being reviewed, the evidence must be construed most favorably toward the trial court's findings and judgment unless they are clearly erroneous. *Anderson v. State*.[7] During the *Jackson-Denno* hearing, Officer Kyle P. Honea testified that before the interview began, he had advised Page of the rights set forth in *Miranda*, using a card that he keeps with him for that purpose. Officer Honea testified that both he and Detective Johnson then asked questions but he had to leave before the completion of the interview. Honea expressed his certainty that he had read the card to Page, and he recalled that Johnson had been in the room at the time. Johnson, however, was unable to remember being present in the room while the warnings were read.

Although Page argues that the inconsistent recollections of the two officers points to "blatant testi-lying," the trial court found otherwise. Notwithstanding a detailed recitation by defense counsel that focused on inconsistencies and omissions in a police report and that emphasized conflicts in the testimony of the two interrogating officers, the trial court noted:

> Well, certainly it would be nice if you didn't have these conflicts but these officers do a lot of cases. Apparently, they haven't reviewed their notes prior to testifying, nor has the D.A. But in any event, the evidence is undisputed that he was properly advised of his *Miranda* rights and it was vol-

[5] *Allen v. State*, 197 Ga. App. 3, 4 (1) (397 SE2d 472) (1990).

[6] *Gidden v. State*, 234 Ga. App. 268 (506 SE2d 448) (1998).

[7] *Anderson v. State*, 224 Ga. App. 608, 610 (1) (481 SE2d 595) (1997).

untary. He hasn't contradicted it himself, so I'm going to find the statement is admissible.

During the *Jackson-Denno* hearing, the trial court was the trier of fact and was in the best position to judge the credibility of witnesses. No evidence was offered to controvert the officer's testimony that Page was, in fact, advised of his constitutional rights and freely waived those rights. We cannot say that the trial court clearly erred in finding the statement admissible. See *Gidden v. State*, supra.

4. Page claims that the trial court erred by refusing to order a new trial when a potential juror saw him enter the courtroom from a holding area.

After being sentenced, Page informed the trial court that he felt his case was "tainted" because "one of the jurors in the back may have seen me come from the back with my attorney." The trial court pointed out that the person had been a prospective juror and that Page had not been in "jail clothes" or in handcuffs. The court noted for the record that while Page may have been seen coming from the holding area, "it's a wooden, brown door and there's nothing about it that identifies it as a holding area." Page admitted that neither he nor his lawyer had requested that anyone be questioned about the issue prior to the conclusion of voir dire. Page cannot now complain about what he failed to timely raise to the trial court. See *Gann v. State*.[8]

5. Page contends that his trial counsel rendered ineffective assistance by failing to preserve the preceding issues.

To establish an ineffective assistance of counsel claim, an appellant must show not only that his trial counsel's performance was deficient but also that the deficient performance prejudiced his defense. *Rucker v. State*.[9] Failure to satisfy either requirement is fatal to an ineffectiveness claim. *Brewer v. State*.[10] But here, the sole issue not properly preserved was the alleged juror incident discussed above. Even had the issue not been waived, it plainly lacks merit. In any event, Page's failure to establish how the incident prejudiced him is fatal to this claim. Id. at 658.

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED JULY 9, 2001.

*Lee W. Fitzpatrick*, for appellant.

---

[8] *Gann v. State*, 245 Ga. App. 448 (1) (538 SE2d 97) (2000).
[9] *Rucker v. State*, 268 Ga. 406, 407 (2) (489 SE2d 844) (1997).
[10] *Brewer v. State*, 224 Ga. App. 656, 657-658 (2) (481 SE2d 608) (1997).

*Garry T. Moss, District Attorney, Scott T. Poole, Assistant District Attorney,* for appellee.